Good morning, Your Honors. My name is Glenn Herr. I represent the plaintiff, Sandusky Wellness Center. I'd like to reserve five minutes of my time for rebuttal. Well, this is a putative class action under the TCPA, the Telephone Consumer Protection Act of 1991, involving unsolicited fax advertisements, sometimes called junk faxes. The core fax are typical for this kind of case. The defendants here bought a list of fax numbers from a third party called InfoUSA, their data broker of sorts. They designed a fax advertisement for one of their products, the drug Prole-Up, which treats osteoporosis. Why did it take so long to bring the lawsuit? I mean, it seems like the main reason, our main problem here relates to that. In other words, they kept this stuff for 18 months. The lawsuits filed three years after the blast fax. And here we are now, seven years later, and the only way you can get this feasible class definition is through affidavits, but it's all because of the time. And so I'm just curious why the insult of the fax happens the minute you get it, just as the insult of the phone call, the robo phone call happens then. Who takes three years to debate their lawsuit? Well, it's a little different than a robo call because you'll have a stack of junk faxes, and you might not realize you have one that's actionable right away. You might not have given it to your attorney right away. And to answer your question directly, I don't know exactly why it took three years and two months or three years and three years to bring this suit. I will note that the statute of limitations is four years. I mean, nobody disputes that the suit was timely and that Sandusky has a right to bring this action, at least for statute of limitations purposes. But it enhances the difficulty of identifying who's in the class. I mean, in a weird sort of way, I can see on the one hand saying, as Judge Suhari acknowledged, that, well, it seems a little unfair because the defendants are the ones that got rid of the information that would tell us. But I could also see thinking about it the other way. How clever. Wait until after they've gotten rid of the records, and now everyone's a member, or at least if they file an affidavit to that effect. And, of course, seven years later, I don't even know what people are going to do. I think they're going to say, I get a lot of faxes. I probably got this one. I was on the list. Seventy-five percent odds I was on it. I want to make sure that I correct something because we would have no incentive to wait until after the records are destroyed. That would only work to the defendant's benefit. We're suing for the $40,000. Why doesn't it work to your benefit to not know right now and not have any way to prove who the 25 percent are that should not be in the class? How? That does work to your benefit. Because we're suing on the $40,000 successful transmissions. That's the same whether we can identify the recipients or not. It's the same number of violations. The statutory damage is the aggregate award at trial. If we get that far and we win on a class-wide basis, it's going to be the same amount no matter what. The Ninth Circuit just used that rationale in its decision striking down the heightened ascertainability standard in Briseno v. ConAgra, January 3rd. We filed a 28-J letter on it. So the Ninth Circuit, the Seventh Circuit in Mullins v. Direct Digital, this court in Ricos v. Procter & Gamble, and now the Ninth Circuit in Briseno. What's the thing you're saying, what's your holding from those cases that you're using here? Identifying class members, the ability to identify the class members is not a prerequisite to class certification, and there is no ascertainability requirement. How about manageability? Correct. That is where it falls in. So the question is, is class certification superior when compared to the alternatives? The Seventh Circuit in Mullins, the Ninth Circuit in the Briseno case, those are both cases of consumers, you know, consumer fraud cases where someone purchased a product and they say it wasn't all natural or it didn't do what it was supposed to do. And the conclusion both those courts reached was, yes, class certification is superior here to the alternatives because the alternatives are either a multitude of individual suits, which is precisely what Rule 23 is designed to prevent, or much more likely, in that context, no one recovers anything and the defendant gets away scot-free. That's not the superior outcome from a policy perspective, especially not with the TCPA, because it's designed to have a deterrent purpose, both specific deterrence as to these defendants so that they know not to do it again, and general deterrence. What's the Court of Appeals case that holds, key emphasis holds, that identification of the class solely by affidavits suffices? So that would not be RICO's because it acknowledged other ways of figuring this out. I don't think it's the Seventh Circuit case either because there were other ways, and they just said, well, for the sake of argument, we'll address this. So that's why I said holds. What's the case, the Court of Appeals case, that holds filing affidavits later suffices for identification of the class? By itself. So the Seventh Circuit case, Mullins, says... That's why I just was being clear about it. They acknowledged there were other ways to identify these people, but then say, for the sake of argument, let's assume that's not the case, and then go on. So I understand why the rest of the opinion is helpful to you, but that's why I emphasized the word holding. What's the case that holds? It was indispensable to the case. That's all there is in the case. It's just like this one. Everyone agrees there's no other way to figure this out other than affidavits. And it's Court of Appeals, and it says, that works. That's enough. For class membership, to attest to your class membership. Yes. Yes, exactly. I don't know of one that says that in and of itself would be sufficient, but I think Mullins stands for that proposition. And I think the Ninth Circuit's procedural case also says that the notion that a class member submitting an affidavit is insufficient as a matter of law, and thus justifies the denial of class certification, if that's all you can do. That's an abuse of discretion. Because you can't know ex ante. First of all, we dispute that that's the only way to establish class membership. Other class members might have a copy of the fax, just like our plaintiff has a copy of the fax. There's no way for Judge Zuhari to know ex ante that no one else out there has one. People use computer software to manage their faxes nowadays. You know, the phone line is hooked up to the computer, and you see the fax on the computer. People would have a strong incentive to go back in their records and check and see if they can find a copy of it, if it means they're going to get $500 to $1,500 per fax if they can find it, assuming that we prevail at trial in this matter. So first of all, I think it's... So just to make sure I'm understanding, you're saying affidavits are not the only way. Class members can not just sign something saying, I got it. They can sign something and attach something that they have from seven years earlier? Is that what you just said? I'm just trying to make sure. I'm saying it's an abuse of discretion to assume that no class member will be able to do that, if that's what's required. Well, maybe I didn't understand the case. I thought you accepted for the sake of argument, for figuring out class certification, that the only way we'd figure out who class members were, were the affidavit. Am I wrong about that? I do not concede that at all. I concede that will be the case for some class members. Not everybody is going to have a copy. I understand that. And not everybody is going to be able to find a copy electronically. But I'm not going to assume right now that none of these putative class members will be able to do that. But why isn't it your burden to put on some evidence that people can do it in ways that are, quote, objective? I did. Our plaintiff has a copy of the facts. No, I know. You're not claiming that it's ascertainable because one out of 53,000 has a copy, are you? No, it's ascertainable because ascertainability has to do with the class definition. And this class definition is objectively defined. It's defined by objective criteria of receiving a particular fax on a particular day containing particular content. And it's not a fail-safe class. It doesn't bake into the definition that the opt-out notice was insufficient or that it was unsolicited or whatever. There's no merits element baked into the definition. It simply is a neutral description, all persons who were sent this fax on this day. That's what makes the definition ascertainable. The Seventh Circuit went into a great deal about this in Mullins, and the Ninth Circuit did in the Bersagno case. This Court didn't go into such detail about ascertainability in Ricos, but it clearly rejected the Third Circuit's heightened ascertainability standard, which imposes the standalone requirement that's not in the rule anywhere. Rule 23 says nothing about ascertainability. I would say it's in every single provision of the rule that you have to know who the class is. Absolutely not. In Rule 23C, it says you give notice to all class members who can be the best notice practicable under the circumstances, including individual notice to those members who can be identified through reasonable effort. It presumes there are cases where you cannot identify class members. The 25 percent gap? That's pretty good, actually. The case, the Seventh Circuit case, I understand it's the Seventh Circuit, not the Sixth, but Hughes v. Core Enterprises, it was written by Judge Posner. It's from 2013. We discussed it in our brief. It had to do with notices on ATM machines, the Electronic Funds Transfer Act. It provides for statutory damages. I think it was $100 per violation instead of $500. But so because of the way the banks keep their records and the ATM provider keeps their records, there was no way to determine who used the ATM during the class period in question. And Judge Posner said, that's fine. That doesn't mean you don't certify, or that denial of class certification is superior. That means you certify the class, you give the best notice you can under the circumstances, as Rule 23 says. That's a notice case. Isn't that a notice case? No, no. It also has to do with superiority because he says superiority here requires class certification because otherwise you're going to let the defendant off scot-free. And this statute provides for statutory damages, and that's a deterrent purpose. So let's just say hypothetically what happens here. I know this is not likely, but I'm just trying to figure something out. So we know 25% did not get this. And just hypothetically, all 100% file affidavits. That's the hypothetical. So obviously 25% are either misremembering or lying. And I'm not asking a dilution question, so don't worry about that. But you now have the award. The award goes out, and 75% are getting less than they should, and they want the rest. So they want to sue the liars or the misremembers. I'll be nice. They file a class action. They file a class action against the whole. All they know is the same thing you know, the 50,000 number or whatever it is. Does that work? Are they allowed to do that? We know within that group, 25% are members of a class that all did the same thing. They claimed a right to money. They got it, and they shouldn't have. Can you bring that class action? You would say it's ascertainable. I just defined it. I don't know what law the false claimants broke. I mean, what's the cause of action, I guess is what I'm asking. They lied. They got money they didn't deserve. We know, as a matter of fact, you have to agree if 100% of this class filed a claim, 25% did it wrongly. You have to agree with that, necessarily. So I'm just asking, now we have a second class action. The second class action is by people that we know got it, like your client, because they got the document. And they sue everybody else. No one else has anything but their affidavit. The class is ascertainable. People that took money they didn't deserve. So what does the judge do? Does the judge certify that one? He dismisses the case for failure to state a claim. Failure to state a claim is fraud on the court. Can I sue another litigant for fraud on the court? For the sake of argument, you can. You're not suing the litigant. You're suing the class members. You're not suing the lawyer. You're suing the other class members. Well, look, my answer is, and I realize maybe I'm not answering your question about this hypothetical class action, but the way to avoid this scenario. Well, then stop. Answer the hypothetical. There's a cause of action. What do you do? Does the judge have to certify the class? I think the judge could find that class certification would not be superior under B3 in that circumstance. Because it would tend to undermine the finality of the first class action judgment. We're not going to make the perfect the enemy of the good in these cases. That's what Mullins held. Perfecting good? 25%. That's a big percentage. So everybody gets 75%. Or the better scenario. That's your theory. That is your theory. Or if you have a fax, if you have a copy of the fax, you get paid a higher pro rata amount than the claimant who does not have a copy of the fax. We structure settlements that way all the time. So what happens with this idea that it's not just affidavits now, it's efforts to go back to phone records and other stuff, doesn't that start to get very individualized? Let me put it this way. If we could not identify anyone, the class was unidentifiable except for our plaintiff, class certification would still be superior in order to achieve the purposes of the TCPA. We would simply cypre the money to some charity in order to create an indirect benefit for the class members. That's what the Ninth Circuit did in a case called Six Mexican Workers from 1990. We cited it in our briefs. That's what the Seventh Circuit did in Hughes v. Core Enterprises. There's been increasing skepticism of cypre approaches to this. I'm sure you've seen that, right? I have, yes. I still think it's vastly superior to just leave these laws that are clearly designed to be enforced in consumer class actions. Isn't this law like other ones, that AGs can enforce them? State attorneys general can enforce them in federal district courts. Okay, so the risk of unenforcement isn't quite accurate. Well, they can't do it on a class basis. I've never seen it done, so I'm not sure. Oh, actually, it is being done in DISH Network. So it is done occasionally by the government, but by and large, the TCPA is enforced by private attorneys general, attorneys acting as private attorneys general. Let me go back before you sit down to your reliance upon Mullins and the Ninth Circuit case, and your questioning whether this is even a proper consideration in terms of the definition of the class. What do we do, assuming that we agreed with you, what do we do with our decision in Young that says that it must be administratively feasible for the court to determine whether a particular individual is a member of the proposed class? I understand you probably disagree with that approach, but assuming we're bound by that, that seems to undercut, frankly, almost everything you've said. I don't disagree with that at all. I think you have to be careful about what that means. So why is it, how in this case, under the facts of this case, is it administratively feasible to determine whether a particular individual is among the ones who got the facts without the facts log? Because they can attest to that under oath, or they can produce a copy of the facts or both. All right, so that's what makes it administratively feasible. Right. But here, we have no idea, because you didn't produce it, how many people you suggest would be able to produce the facts, right? We know we have one, your client. Because your client seems to be sort of in the facts litigation business, along with being chiropractors. He's not in the facts business. He is a chiropractor. He may be a litigious chiropractor, but he's a chiropractor. I don't mean to be unfair. My understanding is he's filed at least ten of these cases through your firm? I think in total, from the start, that's probably accurate. He's enforcing the facts. Ignore my characterization. He's got one. But we have no idea whether there's any more than one that actually has a copy of the facts, right? I cannot prove that as I stand here, no. And the defendants can't prove that they don't. So what is the test that we apply to this judge's decision that it's not administratively feasible? Is it just pure de novo review on every aspect of that decision? Or is the judge's decision that you only got one person with the facts, and we don't really trust these affidavits anyway, so it's not administratively feasible? Is that clear error or abuse of discretion? What is it? That's a review for de novo. That's de novo because it's an error of law. Young v. Nationwide says that. The error of law is based upon the underlying facts upon which the decision was made, right? The error of law in this part of the opinion that the district court judge made was to assume that identification is part of an ascertainability analysis that's not present in Rule 23 and has been rejected by every circuit other than the Third Circuit so far. He should have analyzed that under Rule 23b, 3, superiority, and he didn't do that. It should be reversed and remanded. What about his other explanations for his decision? Predominance, right? That individual questions of prior express permission predominate over the common questions. This circuit addressed that very question in Bridging Communities less than two months ago, Bridging Communities v. Top Flight Financial. We filed a Rule 28j supplement on that as well. The district court denied class certification because of the possibility that some class members might have given prior express permission, and this circuit reversed and said, the defendant hasn't proven that anyone gave prior express permission in this case, but even if they did, even if they did put up some evidence of that, you deal with that by creating subclasses. So, for example, in this case, the defendants have shown four main categories of documents that they say show prior express invitation or permission. They have the 30-second surveys. They're all summarized in the Declaration of Eric Bessie. It's in the defendant's supplemental appendix. 30-second surveys, account change documents, credit applications, and then the miscellaneous e-mails, which are three order forms. I'll take those category by category, and I'll prove on the merits at trial that none of those documents constitutes prior express invitation or permission, and I'll do it on a class basis. Can we wait for the D.C. Circuit decision on this? There's this underlying issue about the agency authority. I'm sure you know about that case. Just for the record, I'm counsel on that case, on the D.C. Circuit. So I think you answered the question. I didn't argue it, but I'm aware of it. So should we wait for it? No, because it could only conceivably make a difference if the defendants really got prior express invitation or permission, and the evidence that they've put up so far is, I mean, we could go through those documents. I'm out of time, obviously, but our position is we want to litigate it on the merits whether any of those things are prior express permission, and if they win on one of those subclasses, then they win it to those class members. You know, I want to reiterate, it's only several thousand class members. Out of 40,000 successful transmissions, the defendants concede. I don't know what several means. Let's say it means five. They concede 35,000 of the class members. They didn't get prior express permission. They may have been different than your client, because they may have been physicians who wanted to see what new drugs are, the cost of drugs. Your client can't prescribe a drug, right? Yes, but whether you like the facts and whether you find it helpful or not has nothing to do with whether the defendant satisfied its obligation to obtain prior express invitation or permission before sending you that fax. You may be perfectly happy getting that fax and find it the most wonderful fax in the world, but it's still a violation of the statute for the defendant to send it to you without prior express invitation or permission. It's not consent, by the way. People throw away the word consent, but that applies to telephone calls, and it's a lower standard. Prior express invitation or permission is a higher standard for fax advertisements. Congress made it that way on purpose. Thank you, Your Honor. Would that go to damages, though, if I was perfectly happy to get the fax? The damages? As a physician who prescribes these drugs and found out I could get a discount on it. If we were suing for actual damages, I would say yes. The statute allows actual damages or statutory damages, automatic $500 per fax, and if the judge finds it willful or knowing, the judge can increase it up to $1,500. But that has nothing to do with the reaction of the recipient. That has to do with the defendant's state of mind. Thank you, sir. All right, thank you. Good morning, Your Honors. Martin Jasek for the defendant's appellees. May it please the Court. Your Honors, there are four buckets in this case. In bucket one are individuals who consented to receive this fax. In bucket two are individuals who did not consent. In bucket three are individuals to whom the fax was successfully sent. In bucket four, individuals to whom the fax was not successfully sent. The problem in this instance and the reason the district court denied certification on predominance grounds is that there are no class-wide means, no class-wide means to determine who falls into which bucket. And the reason that's a problem is because in this instance, and I know counsel spoke a lot about ascertainability in their brief. They talked about fluid recovery, Cypre and so forth. But the issue is that in this instance, the buckets we are talking about are fundamental elements of a TCPA claim. There are three elements of a claim. But just to make sure I'm following your point, what if they're right about ascertainability and that affidavits are fine? So whether it's construing RICOs that way, saying we agree with the Seventh Circuit decision, whatever. If they're right about that, doesn't this argument go away? I don't think so, Your Honor, for a couple of reasons. Number one, the affidavits would just go to the fax logs issue, the successfully sent issue. And again, on ascertainability, I'm happy to Some of your buckets turned on that problem. The two buckets, right. And I just said I'm taking that off the table. So that makes it seem like that's the really important point. The really important point, Your Honor, is consent, buckets one and two. And so even if we use affidavits to identify who was successfully sent this fax or not, even if that could be possible, and again, RICOs, 50% were identifiable through the own documents. And frankly, the cases that do go to show how you do this in a TCPA case, how ascertainability should be considered in a TCPA case, are this Court's decision in American Copper and the Eighth Circuit's decision in Mentox. And both of them said ascertainability in fax TCPA cases, here's how you do it. You use fax logs. And both of those cases said that. But if we leave aside ascertainability, getting to Your Honor's question, we still have the issue of consent because consent affidavits are not going to work for that. Because what we have, Your Honor, we produced over 400,000 pages of consent. And when counsel was discussing certain of the forms, what we did, Your Honor, is just scratching the surface. We went through them to figure out these claims, these 40,000 class members. Do we have evidence that they consented? And we found a lot of it. We put it into the record. Judge Juzuhari did a lot of work looking through them. Our expert found at least 40 different forms. Now, Bessie Medical was established as a single pharmacy in 1948, and so it used various different forms throughout the years for individuals to consent. So these forms are highly varied. Some of them you turn over your fax number and you check a box that you want to receive faxes. On other ones, there's a negative option. Please check a box that you don't want to receive faxes. Some have certain disclaimers. Some have others. And so what claims counsel was mentioning – It just sounds like subclasses, though. But, Your Honor, but the issue with subclasses is if they're subclasses, we still need to determine who goes in them. And the only way to determine that here is individual analysis, as Judge Juzuhari found on analysis of the record. And the reason is this. Even if we credit plaintiff's argument that, well, perhaps we could just go through all the various forms that there are. Who knows how many? There's at least 40. And maybe with Judge Juzuhari we go one by one and we have these arguments. The problem is the forms are filled out in a highly variable manner. So I'll give you one example. There's a clear form that says, check here and provide your fax number if you want to receive faxes for these purposes. We started looking through these forms. Some of them people check the box, provide their fax number, and gave it to us. Great. I think even plaintiff's counsel might agree that that's consent. Others, when we started looking through them, someone would provide their fax number but not check the box. Others, they would check the box, forget to provide a fax number. And then I found one. They checked the box, provided fax number, but they scribbled out the fact that they want to receive advertising faxes. So it is a highly, highly factually based decision. And I would strongly submit that Judge Juzuhari, after spending a lot of time looking into this, did not abuse his discretion in finding that on these facts, consent issues will predominate. And that is my overriding point. If there's one thing I can communicate to this Court, it's that ascertainability, cypre, manageability, I would be happy to defend Judge Juzuhari's ruling on any of those matters. And it's entirely defensible. However, the most important point is that when you're dealing with a cause of action that has three elements, you need to be successfully sent an unsolicited advertisement. Those are the three elements. If two of those three cannot be determined by class-wide means, then individual issues will predominate over common issues. And that is exactly what's happening. What's your thought about the D.C. Circuit decision? Which way does that cut? Should we wait for it? Do you know about it? Absolutely I know about it. Your Honor, if I were to, if Your Honor were to ask me to predict right now, I think what the D.C. Circuit would do is I think it will actually probably state that the FCC never had authority to begin with to change the D.C. Circuit. But I'm asking you, should we wait for it? We don't know what it's going to do. Should we wait for it? I don't think so, Your Honor. Certainly that's, Your Honor, the court certainly could do that. But I don't think it's necessary. And the reason I would say – It sounds like given your prediction of what it's going to do, it would strengthen your hand if we wait. It would. But I think the correct decision is already, based on these facts, based on the law, based on the analysis of Judge Zuhari, I think the correct decision respectfully is already in front of us. And, Your Honor, what I would – You don't really seem to be defending his ascertainability decision. I know you said a little ago I will defend any part of it. Yes. But you're really focusing on predominance. I'm happy to defend it, Your Honor. What's your take on a little advice to the circuit in terms of how to label this, what's really going on, and are you really advocating something that's different from the Seventh and Ninth? And how would you help us articulate what the role of something that goes under the heading of ascertainability really is? Absolutely. I'd be very happy to do that. But to get to the question Your Honor asked that I didn't answer yet, in terms of why not wait, one of the reasons I would say, Your Honor, is Charvat versus Echostar. I believe Your Honor wrote that opinion. And also there's a very recent Sixth Circuit decision. Wait, wait, stop. But tell me why that counsel's in favor of what you're going to say. Finish the sentence. I'm sorry. I actually meant to cite the Sixth Circuit decision that just came down about a month ago, which states that when you have FCC rulings, this court defers to them. So as it stands today, if we have that waiver, I would submit that the court, based on, and I can cite the case again, the court should defer to it. So you started out, I don't think I'm following, you started out by saying no need to wait for the D.C. Circuit, and am I now understanding you to say maybe it's a good idea to wait for the D.C. Circuit? No. I'm sorry. You're making a separate point about, okay, I got it. Exactly. That wasn't my question. Okay. Now go to why don't you defend ascertainability or tell us what the right word for it is and how it should work and whether it's different from the Seventh and Ninth. Certainly. It is different from the Seventh. Well, no. It's different from the Third. I can see that in the Sixth Circuit we're not looking at the higher ascertainability standard. So what are we doing and how similar to the Seventh and Ninth is it? It's as follows. Your Honors, I'm going to read from Ricos now. The Court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. So it's not just a definition. How do you define the class? Any good lawyer could define the class in a way that's objective. Ricos says that affidavits count. Ricos says affidavits can be used as supplementation. Procter & Gamble and Ricos had internal documentation, internal records, that showed more than 50% of the class, more than 50% could be ascertained from internal documents, and Ricos stated that you can use, the majority of Ricos, not the dissent, the majority of Ricos stated that you could use affidavits to supplement the rest. I would state on the ascertainability point, in a TCPA facts case, the best cases to look at are this Circuit's opinion in American Copper and the Medtox case from the ACIP. I'm looking for the rule. The rule is, in a TCPA facts case, here it's not being used as a supplement. Is that your point? Because affidavits are all there is? Correct. Now, he said that, well, not quite true. Class members can go back and look through their phone records and sort this out, and so there would be objective evidence. A couple points to make. Number one, this is a new argument that plaintiffs' counsel are making on appeal. This was not argued in front of Judge Zuhari? Correct, Your Honor. In fact, Judge Zuhari had to go out on his own. He stated in his opinion that, because the plaintiffs' counsel did not provide me with any other means by which I could potentially ascertain the class, I'm going to, on my own, determine whether there are other bases. And then the one that he found was, let's consider whether affidavits would work. And Judge Zuhari, on these facts, on this, again, on this record, seven years ago busy physicians are going to be asked to state whether they received one specific fact seven years ago. Judge Zuhari found on this record it's not enough. But it's not something plaintiff argued. Judge Zuhari went out on his own and determined it. But going to Your Honor's direct specific question, it's possible that there are, in the 53,000, that there are other people who perhaps like Dr. Winestaff or Ed Sandusky bring TCPA claims so maybe they keep their faxes and so forth. It's possible, but plaintiffs have not led any of that evidence at any point in time in the district court. And, in fact, if we look at it, if we look at Medtox again and American Copper, both this circuit and the Eighth Circuit stated in TCPA fax cases, the way you get to this, because you can't just define the class as such, you need to be able to resolve the issue. The way to resolve the issue on class-wide means is fax logs. And so even if there are, if we credit plaintiff and say, there might be some people who do remember, have great memory, or maybe they do have some computer printout, those aren't class-wide means. And what we would have to do is we would have to go in and start cross-examining all of them. How would this case come out on these exact fax and the way it was argued in the district court if it were in the Seventh Circuit? I think it would come out the same way, with the difference that Judge Zuhari in this case, no, I'm going to say this. I think it would come out the exact same way, it's just that in the Seventh Circuit there would be perhaps more argument along which ascertainability are we using. Are we using the Third Circuit version or the Seventh Circuit version? But again, I'm not advocating that the Third Circuit version, the heightened version, should be applied here. I'm saying that even under the lowered version, whatever the terminology is, I think the latest terminology I've seen is the weakened version of ascertainability. Under that basis, this class is still not ascertainable because fax logs don't exist. And I would make one other point. Your Honor was asking plaintiff's counsel about this destruction of the fax logs. Just to be very clear about the record. The record is clear that we don't know whether fax logs ever existed. All we know is that Westfax, the entity that ended up sending them. I'm sorry? When you say whether fax logs existed, you're talking about your clients. Correct, our clients or Westfax. Because Westfax is the company that sent the fax. And so plaintiffs went to Westfax saying, do you have a fax log? No, maybe we sent it to Bessie, we don't know. Then they came to us saying, do you guys have fax logs? And we looked at our records, Your Honor, and that's where the 18-month retention period comes in. So we're at a point where we're saying, maybe they sent us a fax log, we have no idea. So this isn't even a situation where we know they existed, they're gone. We don't know whether they existed to begin with because this case was brought after that retention period expired. So what I would back up to, though, is that in terms of the issue, the driving force here, again, ascertainability, I understand that. When you're looking at the primary elements of a claim, a cause of action, and here it's being successfully sent, an unsolicited advertisement, one of those three is a class-wide question. Is it an advertisement or not? The other two are not class-wide. They cannot be resolved by class-wide means in this instance, on these facts, on this record. And that is why Judge Zuhari, on the basis of predominance, denied certification. And predominance is the correct analysis for that. I'd like to go back a moment to Judge Sutton's question about what is the rule that you're advancing here because it seems to me either you didn't answer the question or I didn't understand the answer. Both are likely. You seem to be saying that the rule that you want is that in a TCPA case you have to have facts logs. Did I understand that correctly or not? No, Your Honor. What I'm advancing is that the easiest, simplest way to affirm this judgment by Judge Zuhari is the predominant standard. What I'm saying is that when we go over into ascertainability, again, I believe absolutely Judge Zuhari got to the right result with this, but it's a more complicated discussion when you start looking at ascertainability. But to answer Your Honor's question, we're not advocating that you – I'm sorry, was Your Honor's question, do you absolutely need facts logs to ascertain a class or to have class-wide issues predominant? You said that's not the rule that you're advancing. Oh, that you don't absolutely need them. You need either, Your Honor, you need either facts logs or some other alternative means by which to determine that question who was successfully sent by class-wide means. Well, Mr. Harris says he's got other alternative means. He says he can produce either clients that have the facts itself, like Sandusky, or he can produce affidavits. So does that fall within your rule or doesn't it fall within your rule? It does not fall within my rule in this case, Your Honor. Okay, so then we've got to refine the rule a little bit to know why, right? Well, and so here it is, Your Honor. Number one, again, it was an argument that was not advanced in the district court here. But even beyond that, even if it had been advanced and was at issue here, my response would be as follows. Even if some people, even a thousand of these people would have other records that we could use to determine whether they did or didn't receive the facts, the problem here is that there's no class-wide means to get to that answer. And so what you need is a class-wide basis. Otherwise, we're going to be in a trial for a very long time. Which means that everybody has to have either – there has to be evidence that either everybody has the facts or everybody has, I think you mentioned, telephone records that they got a fax. So that would be sufficient as an alternative to fax logs, right? Correct. But does it have to be everybody or does it have to be a percentage of that? Yeah, Your Honor, there's no bright-line rule. What does you have mean when you said yes? I'm sorry, I agreed with Your Honor's point that it certainly doesn't have to be 100%. I'm not advocating that perfection is what we're looking for here. But it has to be more than what we have here, where it's potentially just a few of them. It has to be something that can be done on a class-wide basis. And while I would love to come up with potential other ways that it can be done, to be frank, the two courts that I really look at for this, which have considered this issue, Medtox, Eighth Circuit, and this court in American Copper, said, look, the way you do it with faxes is fax logs. And I can tell you, Your Honor, also that to determine whether there are other means, because we needed to be up-to-date on this argument, we took a look at the expert reports that plaintiffs' experts filed in other TCPA cases, Mr. Biggerstaff, who does this a lot. And we looked at what else is used other than fax logs. And we found that he filed 17 reports in TCPA fax cases for the plaintiff. In 15 of them, he referred to fax logs to show that he could identify who the class members were. In the two that he didn't have fax logs because they didn't exist, classes were not certified. And I feel compelled to make one more point on this issue. We cited this in our briefs, Your Honor. I understand plaintiffs making the argument right now that, you know, where we're here, it's ascertainable and so forth, objective criteria. But when we take a look at plaintiffs, this plaintiff, represented by the same plaintiffs' counsel, in their briefing in front of the Eighth Circuit approximately about a year and a half ago in MedTalks, they were asked to distinguish a case that was unfavorable to them. And they stated that in that case, plaintiffs stated, well, in that case, there were no objective criteria to identify class members. You can't do that to lawyers. That's not fair. He's a lawyer. He's got other clients. I understand that. It's not this client that did that. It was this client, Your Honor. It was this client. It was this client. And again. Do you submit this? Do we have this in the record? Yes. It's in our briefing, Your Honor. And also, I didn't want to take it to the point where I'm saying that the client is a stop. Certainly not. I'm just making the point that other than fax logs, fax logs is really how this is done in a TCPA case. Okay. Thank you. Thank you, Your Honor. Mr. O'Hara. Thank you. Yes, just to clarify, the opposing counsel was talking about Sandusky Wellness versus MedTOX. That's the Eighth Circuit opinion. I argued that case as well. And I wrote the briefs in that case. So I know that what I did there was I said, look, the Sixth Circuit case in American Copper said, there's this objection to ascertainability, but we have the fax logs, so it's met. Okay. That it's a sufficient condition to have the fax logs does not mean that's the only way. You've got to be satisfied. You've got that. Go on. Okay. Got it. So what are you saying is an effective substitute for these fax logs? I mean, I know you've referred to Sandusky's got the fax and others might have electronic records, but does it make a difference when we're looking at class-wide basis, whether there's a suggestion that only one or two out of 50,000 have these alternatives, or is the suggestion being made that it's got to be something more than that? My position is that ascertainability is satisfied when the definition is objective, and when someone comes forward and files a claim, you can determine by objective criteria. You don't think that's contrary to Young? I know that's what you want the law to be, but you don't think that's contrary to Young? No, I think it's completely consistent with Young, because I think what Young was talking about was exactly that, that when class members come forward and self-identify, you can determine by objective criteria, not subjective criteria like, you know, whether they felt harassed by the police. There's a famous Seventh Circuit case like that from the 60s, where anybody who felt like they had been harassed was part of the class definition. The Seventh Circuit said, that's vague. I don't know what that means. But by objective criteria, I received a fax on this day. You can determine that, or, you know, I was overcharged. Let me see if I understand how this works. We know how you're defining the class. It seems okay. If there has to be some sort of objective criteria, you're basically saying you're okay to proceed with a class, and if somebody doesn't come forward with this objective criteria of either the fax itself or a phone record, those are the only examples you've mentioned so far, then it's a viable class action, but they're just out. No, they're in. They're bound by a judgment in the case, unless they opt out. I meant in terms of recovery. Correct. They're in the class. They're in the class, but they can't recover. Like in any class action, it happens very often. People are bound by the, you know, class members are bound by the judgment, but they don't share in the proceeds they choose not to. And that's okay. The Supreme Court has held that that's okay. But it doesn't mean you don't, it doesn't mean the possibility that that might happen means, well, let's just not certify the class. And let's just, you know, reject Rule 23 as a mechanism to enforce these substantive laws that Congress has put in place. What do we do about the fact that it seems below you were just focusing on affidavits, that you didn't raise this possibility of different class members can identify whether they've got the fax or go through their phone records to figure out where they got it? I don't think that's right. We filed a brief in support of class certification, and there was a response brief. There was no reply brief, but there was a telephonic hearing. I don't know if I raised that point in the telephonic hearing. And frankly, I'm not sure. Well, if you don't, you sound like the person who's not sure whether they got the fax and might say they did. I'm not really interested if you can't point to the record as to what happened. If you didn't preserve it, you didn't preserve it. And I don't want you to say I might have. Well, I know what I did argue. I know one thing I did argue because I just looked in my brief, my motion for class certification,  It's a part of the rule 23B, three superiority. But that leaves the predominance ruling. No, superiority, not predominance. Predominance doesn't make sense here. This class is defined as people who successfully received the fax, 40,000 people. So when defense counsel was counting it down for you. Whether there was consent. Right, but he said the three elements, received and unsolicited advertisement. Received is not something that doesn't predominate. Everyone received it. Every class member received it. The problem is can you identify them from the universe of the 50,000 targets? That is not a predominance problem. Why can't it be? I don't understand why it doesn't fit in that. Because among the class members, the common issues are is it an advertisement? Is the opt-out notice adequate? Was it sent using a computer or telephone fax machine to a telephone fax machine? Those are common issues. Did they receive it? Did each class member receive the fax? It's already answered by the definition. It's defined as people who received the fax. The problem is an identification problem. And that's because the records have been destroyed. So it's not a predominance issue. It has to be looked at under the superiority analysis. No matter how it comes out in my favor or not, I want to get the analysis right. Because this ascertainability thing, it's creating havoc in the district courts because no one knows what it means. So your theory is he didn't rely on superiority and we should reverse what he did and we should send it back to decide whether this problem of identifying the class can be resolved on superiority grounds? Absolutely. It's a legal error and it's going to cause great confusion not only in TCPA cases but in all other sorts of class actions. Because this ascertainability thing is the defense du jour to class certification. And we have to get past it and get some clarity so the district courts understand that Rule 23 doesn't say anything about ascertainability. The Ninth Circuit just said that. It said we're going to follow the rule. And we're going to read the language of the rule. And it doesn't contain the word ascertainable. And the only time it refers to identifying people is in giving them the best notice practicable if you can. Which implies that sometimes you can't. And there's a large body of law that analyzes identification as a superiority issue. And we think it is clearly superior here. Even if the lack of records has made it difficult to identify people. The deterrent objective of the TCPA overrides all that. What if we take the view that we're just not buying in a class where 25% are not members? So it's a very big delta, we'll say. And you want to hear it or not? You want to answer the question I haven't asked? The class definition is only the 75%. It doesn't contain the other 25%. I know. But given the fact that we don't know who they are, we don't have the logs, we know we have a problem, okay? And what if we take the view that given the way this case has been presented, the way it was argued below, the only way to fix that, proffered by the plaintiffs, is affidavits? In this kind of a setting, that's not going to suffice. And so if we take that view, it does look like the predominance ruling is pretty good. Because the only way around that is to do this person-by-person inquiry. And that does start to look like a predominance problem. Okay. I still think that's a superiority issue because you're weighing the costs and benefits of class certification. Should we pay some people but not everybody? Or should we let the defendant get off scot-free? That's the comparative analysis that the Seventh Circuit talked about in Mullins. Second, I want to make clear that it's our position that prior express invitation or permission, the defense claimed to have gotten it in these four different categories or maybe 40 different categories. However many there are, I'll take them one by one. And I'll knock them out one at a time. Give me each document that you say constitutes prior express permission. Tell me which class members are in there. And I'll take it to the jury or on summary judgment to the judge. And I'll say this doesn't meet the standards for prior express invitation or permission. And that's only if the opt-out notice regulation for faxes set with permission is considered waived by the agency, which is a whole separate issue. We haven't really talked about it very much, but it's our position that. You don't need to go there. I'm out of time. All right. Thank you. Appreciate it. Appreciate the briefs, the advocacy. Thanks so much. Tricky case. We'll work through it. Case will be submitted. Thank you very much.